| | |
|---|---|
| Q LEVEL, LLC, a Nevada limited Liability company, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MOOG MUSIC, INC., and MOOG )<br>INSTITUTE, INC., )<br>)<br>Defendants. )<br>_____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendants' Motion to Dismiss [Doc. 44]; the Magistrate Judge's Memorandum and Recommendation [Doc. 50] regarding the disposition of the Motion to Dismiss; the Defendants' Objections to the Memorandum and Recommendation [Doc. 51]; and the Plaintiff's Objections to the Memorandum and Recommendation [Doc. 52].

I.  **BACKGROUND**

On October 17, 2019, the Plaintiff Q Level, LLC, (the "Plaintiff") filed a Complaint in the United States District Court for the Central District of California asserting breach of contract, *quantum meruit*, and promissory

estoppel claims against Moog Music, Inc., and Moog Institute, Inc. (the "Defendants"). [Doc. 1].

On November 12, 2019, the Defendants filed a motion to dismiss for lack of personal jurisdiction, a motion to transfer venue, and a motion to dismiss for failure to state a claim. [Doc. 18-14]. On December 23, 2019, the Plaintiff filed an amended complaint (the "First Amended Complaint"). [Docs. 29, 31, 32].

On January 10, 2020, the Defendants filed a new motion to dismiss for lack of personal jurisdiction, a motion to transfer venue, and a motion to dismiss for failure to state a claim. [Doc. 33].

On February 11, 2020, the Central District of California found that it lacked personal jurisdiction over the Defendants and granted the Defendants' motion to transfer the case to this District. [Doc. 37].

On February 21, 2020, the Defendants filed the present Motion to Dismiss. [Doc. 44]. The Plaintiff responded and the Defendants replied. [Docs. 48, 49].

Pursuant to 28 U.S.C. § 636(b) and the standing Orders of Designation of this Court, the Honorable W. Carleton Metcalf, United States Magistrate Judge, was designated to consider the Defendants' Motion to Dismiss and to submit a recommendation for its disposition. On June 15, 2020, the

2

Magistrate Judge filed a Memorandum and Recommendation recommending that the Defendants' Motion to Dismiss be granted as to the claim for breach of contract and be denied as to the claims for *quantum meruit* and promissory estoppel. [Doc. 50].

The parties were advised that any objections to the Magistrate Judge's Memorandum and Recommendation were to be filed in writing within fourteen (14) days of service. On June 29, 2020, each party timely filed objections. [Docs. 51, 52]. On July 13, 2020, each party responded. [Docs. 53, 54].

## II. STANDARD OF REVIEW

The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). The Court is not required to review, under a *de novo* or any other standard, the factual findings or legal conclusions of the magistrate judge to which no objections have been raised. Thomas v. Arn, 474 U.S. 140, 150 (1985).

Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

**III. DISCUSSION**

The Defendants present two objections to the Memorandum and Recommendation. [Doc. 51]. First, the Defendants object that the Magistrate Judge improperly denied the motion to dismiss the promissory estoppel claim because North Carolina does not recognize promissory estoppel claims and promissory estoppel under California law requires a definite and certain promise. [Id. at 2-7]. Second, the Defendants object that the Magistrate Judge improperly denied the motion to dismiss the *quantum meruit* claim because the First Amended Complaint failed to allege that the Plaintiff had a reasonable expectation of payment from either of the Defendants. [Id. at 8-11].

The Plaintiff presents two objections to the Memorandum and Recommendation. [Doc. 52]. First, the Plaintiff objects that the Magistrate Judge's made premature recommendations regarding the materiality of provisions missing from the parties' agreement because questions of materiality are generally for the jury under North Carolina and California law.

4

[Id. at 3-4]. Second, the Plaintiff objects that the Magistrate Judge erred by finding that the last act concerning the formation of the MOU occurred in November 2018 when the MOU was amended. [Id. at 4-5].

### A. Defendants' First Objection

The Defendants' first objection challenges the Magistrate Judge's recommendation that the Plaintiff's promissory estoppel claim not be dismissed. [Doc. 51 at 7]. The Defendants agree with the Magistrate Judge that the promissory estoppel claim cannot proceed under North Carolina law. They object, however, to the Magistrate Judge's conclusion that the promissory estoppel claim may be able to proceed under California law. They argue that promissory estoppel claims under California law require a clear and definite promise. The Magistrate Judge concluded that the Memorandum of Understanding ("MOU") was too uncertain and indefinite to be enforced. [Id.]. Therefore the Defendants argue that the MOU cannot serve as the basis for a promissory estoppel claim. They also argue that the promises in the MOU are insufficient because the agreement was conditional. [Id. at 4].

The Magistrate Judge determined that the parties had provided an insufficient record at this stage for the Court to determine whether North Carolina or California law applied. [Doc. 50 at 21]. The Court agrees with

5

the Magistrate Judge that the present record makes it impossible to determine which state's law should govern this matter. [Doc. 50 at 21]. Therefore, even though it appears to be undisputed that this promissory estoppel claim cannot survive if North Carolina law applies, the claim can nonetheless survive dismissal under Rule 12(b)(6) if it remained viable under California law. This, of course, does not preclude an ultimate determination that North Carolina law applies.

Under California law, "[t]he elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." Flintco Pac., Inc. v. TEC Mgmt. Consultants, Inc., 1 Cal. App. 5th 727, 734 (Ct. App. 2016) (internal quotations and citations omitted). "To be enforceable, a promise need only be definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages . . . . [T]hat a promise is conditional does not render it unenforceable or ambiguous." Aceves v. U.S. Bank, N.A., 192 Cal. App. 4th 218, 226, 120 Cal. Rptr. 3d 507, 514 (Cal. App. 2 Dist. 2011) (citations and quotations omitted).

The Defendants attempt to tie the viability of the promissory estoppel claim to the enforceability of the MOU. [Doc. 51 at 4]. However, clear and definite promises in an unenforceable agreement can form the basis for a promissory estoppel claim. US Ecology, Inc. v. State of California, 129 Cal. App. 4th 887, 902, 28 Cal. Rptr. 3d 894, 905 (2005) (stating that "promissory estoppel is an equitable doctrine to allow enforcement of a *promise that would otherwise be unenforceable . . ."*) (emphasis added) (citation omitted).[1] As such, the fact that the MOU is unenforceable does not dictate that a clear and unambiguous promise therein is insufficient to support a promissory estoppel claim. Moreover, the fact that the MOU contained "conditionally binding terms" does not mean that the promises in the MOU cannot support a promissory estoppel claim. Aceves, 192 Cal. App. 4th at 226, 120 Cal. Rptr. 3d at 514 (stating that the fact "that a promise is conditional does not render it unenforceable or ambiguous.") (citations and quotations omitted). As such, the viability of the promissory estoppel claim depends on whether the promise was clear and definite, not whether the promise was made in the unenforceable MOU.

---

[1] The cases cited by the Defendants involve loan agreements that lacked key terms such as interest rates and payment schedules. [Doc. 51 at 3-7]. This case, however, does not involve a proposed financial agreement that was never effectuated. Instead, this case involves an event that was produced by the Plaintiff pursuant to alleged promises that were made by the Defendants. As such, the cases cited by the Defendants are inapposite.

Here, the First Amended Complaint alleges that the Defendants

> made clear and unambiguous promises to Q Level for the purpose of inducing it to continue providing services and expend promotional efforts for the Festival as outlined in the MOU, including the promise that Q Level would produce the Festival in 2020 and subsequent years, and the promise that Moog was engaging in good-faith efforts to negotiate a long-form agreement.

[Doc. 32 at ¶ 44]. The promise to have the Plaintiff produce the 2020 Festival is clear and unambiguous, even though the Plaintiff does not allege by what means such a promise was made – whether as part of the MOU or otherwise. Nonetheless, at this stage the Court takes the allegations as true for the purpose of determining whether they state a claim. As such, the Plaintiff's promissory estoppel claim under California law survives the Defendants' motion to dismiss. Accordingly, the Defendants' first objection is overruled.

### B. Defendants' Second Objection

In their second objection, the Defendants argue that the Magistrate Judge's recommendation that the Court not dismiss the Plaintiff's *quantum meruit* claim was in error because the First Amended Complaint contains no allegations that the Plaintiff had a reasonable expectation to receive payment from the Defendants. [Doc. 51 at 8].

The North Carolina Supreme Court has stated that "*[q]uantum meruit* operates as an equitable remedy based upon a quasi contract or a contract

implied in law which provides a measure of recovery for the reasonable value of services rendered in order to prevent unjust enrichment." Ron Medlin Const. v. Harris, 364 N.C. 577, 580, 704 S.E.2d 486, 489 (2010) (internal quotations omitted). "To recover in *quantum meruit*, [a] plaintiff must show: (1) services were rendered to defendants; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously." Clark v. Burnette, No. 19 CVS 8565, 2020 WL 469428, at *6 (N.C. Super. Jan. 28, 2020) (quoting Envtl. Landscape Design Specialist v. Shields, 75 N.C. App. 304, 306, 330 S.E.2d 627, 628 (1985)).  Similarly, under California law:

> To recover in quantum meruit, a party need not prove the existence of a contract, but it must show the circumstances were such that the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made. The requisite elements of quantum meruit are (1) the plaintiff acted pursuant to an explicit or implicit request for the services by the defendant, and (2) the services conferred a benefit on the defendant.

Port Med. Wellness, Inc. v. Connecticut Gen. Life Ins. Co., 24 Cal. App. 5th 153, 180, 233 Cal. Rptr. 3d 830, 852 (Ct. App. 2018), reh'g denied (June 6, 2018), review denied (Sept. 12, 2018) (internal citations and quotations omitted).

The First Amended Complaint alleges that the Plaintiff "reasonably anticipated receiving compensation for its services—it did not willingly provide the benefits . . . at a loss." [Doc. 32 at ¶ 38]. As such, the Plaintiff alleges that it expected payment for its services. The Defendants, however, argue that the Plaintiff could not have expected payment from them because the MOU stated that a future operating agreement would be entered that would give the Plaintiff "100% of profits and 100% of losses." [Doc. 51 at 8]. While the Defendants are correct that the MOU does not contain any promise of payment, the parties never entered into any future operating agreement and the MOU is unenforceable. At this stage, however, the Court must draw all inference in favor of the non-moving party. While it is unclear whether the Plaintiff "reasonably anticipated receiving compensation for its services" from the Defendant or from profits the Plaintiff may generate by producing the 2019 Festival, the Court must draw the inference more favorable to the Plaintiff. Where work has been performed and the parties failed to enter into an enforceable agreement, the equitable remedy of *quantum meruit* allows for payment to prevent unjust enrichment. Ron Medlin Const., 364 N.C. at 580, 704 S.E.2d at 489; Port Med. Wellness, 24 Cal. App. 5th at 180, 233 Cal. Rptr. 3d at 852. As such, the Defendants' second objection is overruled. Nevertheless, the Court feels compelled to note that while the Plaintiff

survives review at this stage based upon some weak pleading, this does not necessarily mean that the Plaintiff will be able to sustain these claims. It is simply premature to dismiss them now.

### C. Plaintiff's First Objection

The Plaintiff first argues that the Magistrate Judge erred by dismissing the breach of contract claim on the grounds the MOU did not contain all the material terms, which the Plaintiff contends is a question for the jury. [Doc. 52 at 3]. The Plaintiff, however, misstates both North Carolina and California law by stating that "the question of materiality of the contractual terms that were agreed upon is one for the jury." [Doc. 523 at 3]. Under California law, "a contract must be sufficiently definite 'for *the court* to ascertain the parties' obligations and to determine whether those obligations have been performed or breached.'" Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 789 (9th Cir. 2012) (emphasis added) (citing Bustamante v. Intuit, Inc., 141 Cal.App.4th 199, 45 Cal.Rptr.3d 692, 699 (2006)). Likewise, under North Carolina law, whether a contract is unenforceable because it leaves material provisions open for future agreement is a question of law. Dunn v. Dart, 2011 NCBC LEXIS 24, 2011 WL 2749569, at *26 (N.C. Super. Ct. July 14, 2011). Courts in both states routinely determine that contracts lack material and essential terms and are therefore unenforceable. See, e.g., Chappell v.

11

Roth, 353 N.C. 690, 692 (2001); Daniels v. Select Portfolio Serv'ing Co., Inc., 246 Cal.App.4th 1150, 1175-76 (2016).  The cases cited by the Plaintiff are inapposite because they do not consider whether a contract is sufficiently definite to be enforceable.  As such, the Plaintiff's first objection is overruled.

### D. Plaintiff's Second Objection

In its second objection, the Plaintiff argues that "the Magistrate Judge's opinion is in error because it concluded that the November 2018 Amendment pertains to the "last act" choice of law analysis even though the "'modification of a contract [does] not change the location where the contract was made'" under North Carolina law.  [Doc. 52 at 2 (citing Burley v. U.S. Food, Inc., 368 N.C. 315, 318 (2015))].

When analyzing the choice of law issue, the Magistrate Judge highlighted that "[t]he First Amended Complaint does not . . . allege where Adams was located when he signed the MOU on behalf of Institute on [September 21, 2018], nor – importantly – does it allege the sequence in which the signatures were affixed by Ryan and Adams on September 21." [Id. at 11].  The Magistrate Judge further stated that the allegations of the First Amended Complaint also made it impossible to determine where the parties signed the Amendment to the MOU.  [Id.].  Accordingly, the Magistrate Judge concluded that "the location and timing of the last act

12

essential to a meeting of the minds between the parties" *could not be determined* because the state where the parties signed the MOU and the Amendment was unclear on the existing record. [Doc. 50 at 12].

The Magistrate Judge's consideration of the Amendment when analyzing the choice of law issue is irrelevant because he ultimately concluded that the MOU is unenforceable under both California and North Carolina law. [Doc. 50 at 15-18]. Moreover, even if the Magistrate Judge had completely disregarded the Amendment when analyzing the choice of law issue, that would not have affected his ultimate conclusions because the First Amended Complaint made it impossible to determine the state where the MOU was originally signed. [Doc. 50 at 11]. As such, the Plaintiff's second objection is without overruled.

## IV. CONCLUSION

After careful consideration of the Memorandum and Recommendation and the parties' Objections thereto, the Court finds that the Magistrate Judge's proposed conclusions of law are correct and consistent with current case law. Accordingly, the Court hereby overrules the Plaintiff and Defendants' Objections and accepts the Magistrate Judge's recommendation that the Motion to Dismiss be granted as to the breach of

contract claim and be denied as to the *quantum meruit* and promissory estoppel claims.

**IT IS, THEREFORE, ORDERED** that the Defendants' Objections to the Memorandum and Recommendation [Doc. 51] are **OVERRULED**; the Plaintiff's Objections to the Memorandum and Recommendation [Doc. 52] are **OVERRULED**; the Memorandum and Recommendation [Doc. 50] is **ACCEPTED**; and the Defendants' Motion to Dismiss [Doc. 44] is **GRANTED** with respect to the Plaintiff's breach of contract claim and **DENIED** with respect to the Plaintiff's *quantum meruit* and promissory estoppel claims.

**IT IS SO ORDERED.**

Signed: September 4, 2020

Martin Reidinger
Chief United States District Judge